COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


BERGLUND CHEVROLET, INC. AND
 VADA GROUP SELF-INSURANCE ASSOCIATION
                                                          OPINION BY
v.        Record No. 2897-03-3                    JUDGE D. ARTHUR KELSEY
                                                          SEPTEMBER 7, 2004
RICHARD LEE LANDRUM


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Iris W. Redmond (Midkiff, Muncie & Ross, on brief), for appellants.

        No brief or argument for appellee.


        Berglund Chevrolet, Inc. and the VADA Group Self-Insurance Association (collectively

"Berglund") contend that the Workers' Compensation Commission erred by finding that Richard

Landrum's sexual dysfunction was a compensable consequence of a work-related injury.

Berglund also argues that the statute of limitations and equitable doctrine of laches bar

Landrum's claim.  Finding no error in the commission's findings, we affirm its award.

                                                I.

        We view the evidence on appeal in the light most favorable to Landrum, the prevailing

party before the commission.  Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538,

539 (2003).

        While at work on August 26, 1994, Landrum suffered a back injury when a co-employee

pulled a chair from beneath him as he was sitting down.  Landrum fell, "landing on his buttock

with his back striking the wall."  Landrum described feeling a shock "extend up his spine to

about his head and down into both legs to about the knees." He reported the accident and received a workers' compensation award for a herniated disc, requiring lower back surgery.

Soon after the accident, Landrum began feeling a "severe" and "steady constant pain" in his "private area." Within a few months, he started experiencing intermittent episodes of sexual dysfunction. Landrum explained the problem, at that time, "was more in the nature of pain rather than actual erectile dysfunction."

Landrum visited Dr. John Heil, a clinical psychologist, in September 1999. Dr. Heil evaluated Landrum and concluded he suffered from "major depression" and "pain disorder with psychological factors." Over the next several months, Landrum began taking a variety of anti-depressant medications.

In early 2000, Landrum experienced increased episodes of sexual dysfunction. The symptoms grew worse as time progressed, but it was not until March 2002 that Landrum disclosed his condition to Dr. John Daugherty, his treating physician. Dr. Daugherty prescribed Viagra based upon his medical opinion that:

> Mr. Landrum is regularly followed through our office for complications of a closed head injury that occurred on 6/08/90 with associated chronic headaches. He, in addition, has a history of back injuries associated with both the headaches and back pain, a chronic pain syndrome/complex regional pain disorder. As a result of the *combination of these problems and the medications used to treat them*, he has difficulty with erectile dysfunction, improved with Viagra. It is difficult to blame a specific medication or injury and it is likely that it is the *combination of both injuries and his medications* that have contributed to his sexual dysfunction.
>
> It is my feeling that both injuries play a role in causing his sexual dysfunction, along with the associated treating medications and therefore there should be some divided responsibility relative to coverage of the patient's Viagra.

(Emphasis added). The 1990 accident referred to by Dr. Daugherty involved a preexisting injury caused when "a meat hook or some type of metal hook" hit Landrum in the forehead.

Focusing more on Landrum's depression rather than his pain syndrome, Dr. Heil offered this psychological opinion in a December 2002 report:

> Based on the timeline of onset and clinical circumstances, it is my impression that there is a preponderance of evidence to suggest that *this is due to his on-the-job injury* of August 24, 1994. Specifically, sexual performance was not a problem prior to the injury. To the extent it may be influenced by stress, depression, or medication use, it, in turn, appears to relate back to this injury — as use of mediation [sic] and issues of depression and anxiety do appear to have arisen from this injury. In addition, Mr. Landrum has been in a well established, positive, supportive, marital relationship which would preclude performance anxiety as a likely precipitant in this case. In fact, failure to perform sexually has added stress to this relationship, which is the most important element of his support system.

(Emphasis added).[1]

Based upon these opinions, Landrum filed a claim with the commission for payment of his Viagra prescriptions and for one of his visits with Dr. Daugherty. After reviewing the evidence, the deputy commissioner awarded the Viagra prescription benefits on the ground that Landrum's sexual dysfunction was "a direct result of side-effects from medications prescribed to treat his injury, and the cost of managing those side effects is the defendant's responsibility."

Because Landrum's condition did not become constant until shortly before he reported it to his employer, the deputy declined to apply the doctrine of laches. The deputy did not address Berglund's statute of limitations defense.

The deputy refused to order Berglund Chevrolet to pay Dr. Daugherty's invoice, finding that particular office visit unrelated to the workplace accident.

---

[1] Landrum also began receiving psychiatric care from Dr. Robert Murdock in September 2002. Dr. Murdock concluded the "primary basis of [Landrum's] sexual dysfunction may be one or more of [his] psychiatric medications, most especially Celexa and Amitriptyline. Since this type of anti-depressant appears essential to control [his] psychiatric symptoms and as Viagra appears to be the only medicine likely to offset this particular side-effect, I recommend that [Landrum's] request to have it authorized through your Workman's Compensation insurance be granted."

On review, the full commission unanimously affirmed. The commission held that "the evidence predominates in establishing that the claimant has developed sexual/erectile dysfunction (and a need for Viagra), at least in part, as a direct consequence of the workplace injury to his back." The commission also determined neither the statute of limitations nor the doctrine of laches barred Landrum's claim. The denial of Dr. Daugherty's invoice, the commission agreed, was proper because Landrum did not prove this treatment related to his employment injury or its medical *sequelae*.

II.

On three grounds, Berglund appeals the commission's award of Viagra prescription benefits to Landrum. First, Berglund argues that Landrum's sexual dysfunction cannot be fairly characterized as a compensable consequence of his 1994 workplace injury. Second, in any event, the sexual dysfunction should be treated as a new and separate injury for purposes of the statute of limitations. Third, Berglund contends the equitable doctrine of laches bars the claim even if the statute of limitations does not do so. The commission disagreed with each of these assertions, as do we.

We begin with the governing standard of review. By statute, an award of the commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command," Cent. Va. Obstetrics & Gynecology Assocs. v. Whitfield, 42 Va. App. 264, 279, 590 S.E.2d 631, 639 (2004), one that we scrupulously obey both in principle and in practice when reviewing questions of causation, see, e.g., Steadman v. Liberty Fabrics, Inc., 41 Va. App. 796, 803, 589 S.E.2d 465, 469 (2003); S.P. Terry Co. v. Rubinos, 38 Va. App. 624, 632, 567 S.E.2d 584, 588 (2002); Lee County Sch. Bd. v. Miller, 38 Va. App. 253, 260, 563 S.E.2d 374, 377 (2002).

- 4 -

We likewise defer to the commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts" — for inferences, like historic facts, are likewise "equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983); see also Hall v. Winn Dixie Stores, Inc., 41 Va. App. 835, 843, 589 S.E.2d 484, 488 (2003). Such deference is warranted "even though there is evidence in the record to support a contrary finding." S.P. Terry Co., 38 Va. App. at 632, 567 S.E.2d at 588 (citations omitted). Acting within its factfinding discretion, therefore, the commission "is free to adopt that view 'which is most consistent with reason and justice.'" Georgia-Pac. Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (quoting C.D.S. Constr. Servs. v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978)) (bracketed material omitted).

A.

The doctrine of compensable consequences attempts, in a single phrase, to summarize the attenuation limits of causation in workers' compensation law. "The simplest application of this principle is the rule that all the medical consequences and *sequelae* that flow from the primary injury are compensable." 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.01, at 10-3 (2003). Virginia courts have often used just this description, see, e.g., Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 99 (1977); Sturtz v. Chesapeake Corp., 38 Va. App. 672, 677, 568 S.E.2d 381, 384 (2002); Am. Filtrona Co. v. Hanford, 16 Va. App. 159, 163, 428 S.E.2d 511, 513 (1993), as has the commission, see, e.g., Fuller v. Meadow Creek Wood Shop, 2004 Va. Wrk. Comp. LEXIS 139, at *7 (2004).

Where such a causal link exists, "the doctrine of compensable consequences extends the coverage of the Workers' Compensation Act to the subsequent injury because the subsequent injury 'is treated as if it occurred in the course of and arising out of the employee's employment.'" Bartholow Drywall Co. v. Hill, 12 Va. App. 790, 794, 407 S.E.2d 1, 3 (1991)

(quoting Leonard, 218 Va. at 214, 237 S.E.2d at 100). The doctrine applies "when the injury does not arise on the day of the accident, but instead develops as a direct consequence of an initial injury." Paul Johnson Plastering v. Johnson, 265 Va. 237, 244, 576 S.E.2d 447, 451 (2003) (citation omitted).

The doctrine has its limits, however. "The link of causation must *directly connect* the original accidental injury with the additional injury for which compensation is sought." Amoco Foam Prods. Co. v. Johnson, 257 Va. 29, 33, 510 S.E.2d 443, 445 (1999) (emphasis added); see also Paul Johnson Plastering, 265 Va. at 244, 576 S.E.2d at 452. In other words, the issue is "essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence." Williams Indus. v. Waggoner, 24 Va. App. 181, 188, 480 S.E.2d 788, 791 (1997). "The issue in all of these cases is exclusively the medical issue of causal connection between the primary injury and the subsequent medical complications. By the same token, denials of compensation in this category have invariably been the result of a conclusion that the requisite medical causal connection did not exist." 1 Arthur Larson, *et al.*, *supra* § 10.02, at 10-5.[2]

In this case, Dr. Daugherty attributed Landrum's sexual dysfunction (and, thus, his need for Viagra) to the original workplace injury. Dr. Daugherty focused on the combination of the "chronic pain syndrome/complex regional pain disorder" caused in part by the workplace accident and "the medications used to treat them." In his view, the causal chain was not interrupted by any intervening accidents, unrelated injuries, idiopathic conditions, or causal influences for which Landrum should bear responsibility. Finding Dr. Daugherty's opinion

---

[2] Even so, that does not mean a finding of causation must be "based exclusively on medical evidence. 'The testimony of a claimant may also be considered in determining causation, especially where the medical testimony is inconclusive.'" Lee County Sch. Bd. v. Miller, 38 Va. App. 253, 260, 563 S.E.2d 374, 377-78 (2002) (quoting Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996)).

persuasive, the commission concluded "the evidence predominates in establishing that the claimant has developed sexual/erectile dysfunction (and a need for Viagra), at least *in part*, as a *direct consequence* of the workplace injury to his back." (Emphasis added).[3]

Berglund contends Dr. Daugherty's opinion lacks sufficient certitude to justify the commission's reliance on it. His medical opinion attributed the sexual dysfunction to a cluster of causes — the 1990 head injury, the 1994 back injury, the chronic pain syndrome, and the pain medications — but did not separate out any specific predominating cause. Instead, Dr. Daugherty concluded only that the sexual dysfunction was a "result of the combination of these problems and the medications used to treat them."

Berglund's point, however, goes only to the weight of the evidence, not its probative sufficiency. A medical opinion finding causation *in part*, if established with the requisite certitude, can be relied upon by the factfinder as persuasive. See Smith v. Fieldcrest Mill, 224 Va. 24, 29, 294 S.E.2d 805, 808 (1982) (holding that compensable cause need only be a "*contributing* factor" (emphasis in original)); Bergmann v. L & W Drywall, 222 Va. 30, 32, 278 S.E.2d 801, 803 (1981). "The extent or degree to which the work-related cause contributed is not important. It matters only that the work-related cause contributed in some part to claimant's disability." Henrico County Sch. Bd. v. Etter, 36 Va. App. 437, 446, 552 S.E.2d 372, 376 (2001). It was unnecessary, therefore, for Dr. Daugherty's expert opinion to segregate the work-related part from the non-work-related part.

---

[3] The commission also considered the opinions of Dr. Heil and Dr. Murdock. Because Dr. Daugherty's opinion is a sufficient factual predicate for the commission's causation finding, we need not address Berglund's argument that the opinions of Dr. Heil and Dr. Murdock involve theories of indirect, sequential causation rejected by Amoco Foam Prods. Co. and Paul Johnson Plastering. What was lacking in both of those cases is present here: an expert medical opinion directly linking the original injury to the subsequent medical *sequelae*.

In our case, the commission found the sexual dysfunction was "at least in part" a consequence of the workplace injury. Given the weight afforded the opinion of a treating physician — particularly one involving medical causation[4] — coupled with the compounding weight that opinion has once it has been accepted as true by the factfinder, we see no basis for overturning the commission's decision to treat Landrum's sexual dysfunction as a compensable consequence of his workplace injury.

B.

Berglund next claims that even if Landrum's sexual dysfunction was compensable, the commission erred by not applying the statute of limitations to bar Landrum's claim. We disagree.

The timeliness of a compensable consequence claim depends on the type of injury suffered. "Where the subsequent injury is a new injury, the provisions of Code § [65.2-601] are applicable from the date of that new injury. When the subsequent injury is a change in condition, the provisions of Code § [65.2-708(A)] are applicable." Bartholow Drywall Co., 12 Va. App. at 797, 407 S.E.2d at 5. Thus, "new and separate" claims that causally relate to the original *accident*, but not the original *injury*, must be filed within the original limitations period

---

[4] Though not necessarily conclusive, "the opinion of the treating physician is entitled to great weight." H.J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 655, 561 S.E.2d 6, 11 (2002) (citing Fingles Co. v. Tatterson, 22 Va. App. 638, 641, 472 S.E.2d 646, 647 (1996)). "A doctor's statement that a certain condition is probably connected to the injury means there is a reasonable likelihood of causation, which 'is sufficient to permit a trier of fact to accord the statement probative weight.'" Marriott Int'l Inc. v. Carter, 34 Va. App. 209, 215, 539 S.E.2d 738, 741 (2001) (quoting Cook v. City of Waynesboro Police Dep't, 225 Va. 23, 30, 300 S.E.2d 746, 749 (1983)).

outlined in Code § 65.2-601, which requires filing "within two years after the accident." See also Sturtz, 38 Va. App. at 676, 568 S.E.2d at 383.[5]

On the other hand, if the consequent injury is a mere change in condition ─ some form of medical *sequelae* of the original injury, though not of the accident itself ─ the claim falls within the limitations period of Code § 65.2-708(A), which requires filing within 24 months from the "last day for which compensation was paid, pursuant to an award" by the commission. When the medical evidence shows "an unbroken 'chain of causation,' the subsequent accident and injuries flowing from it are treated as part of the original claim and do not result in the establishment of a new, original, separate and independent claim file." Sturtz, 38 Va. App. at 676-77, 568 S.E.2d at 383; see also Bartholow Drywall Co., 12 Va. App. at 793, 407 S.E.2d at 2-3.

In this case, the commission correctly viewed Landrum's sexual dysfunction as a change in condition, not a new and separate injury. This holding tracks Dr. Daugherty's opinion attributing the sexual dysfunction to a combination of the "chronic pain syndrome/complex regional pain disorder" caused in part by the workplace accident and "the medications used to treat them." As a result, Landrum's claim was subject to the statute of limitations period codified in Code § 65.2-708(A). By filing his claim for benefits in November 2002, while under an open award of temporary total disability benefits, Landrum acted before the time limitation outlined in Code § 65.2-708(A) even began to run.

---

[5] See also Southwest Va. Tire, Inc. v. Bryant, 31 Va. App. 655, 660, 525 S.E.2d 563, 566 (2000) ("A change in an employee's physical condition that is compensable under Code § 65.2-708 includes, among certain other changes, any 'progression, deterioration, or aggravation' of a previously compensated injury. However, 'a new and separate accidental injury' may not be compensated as a change in condition of a previous injury." (citations omitted)).

C.

We likewise find no fault in the commission's refusal to dismiss Landrum's claim under the equitable doctrine of laches. We define laches as "'the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party.'" Bazzle v. Bazzle, 37 Va. App. 737, 747, 561 S.E.2d 50, 55 (2002) (quoting Princess Anne Hills v. Susan Constant Real Est., 243 Va. 53, 58, 413 S.E.2d 599, 602 (1992)). The doctrine has no fixed guidelines — "'no rigid rule can be laid down as to what delay will constitute laches; every suit must depend upon its own circumstances.'" Stewart v. Lady, 251 Va. 106, 114, 465 S.E.2d 782, 786 (1996) (quoting Puckett v. Jessee, 195 Va. 919, 930, 81 S.E.2d 425, 431 (1954)). The litigant raising laches as a defense bears the burden of demonstrating both the requisite delay and prejudice. Barr v. S.W. Rodgers Co., 34 Va. App. 50, 58, 537 S.E.2d 620, 624 (2000).

The commission acted within its factfinding discretion when it found that the delayed emergence of Landrum's sexual dysfunction, not a neglectful failure to assert his claim, explains the interval between his 1994 back injury and his 2002 claim for Viagra prescription benefits. Landrum acknowledged suffering occasional episodes of sexual dysfunction "soon after his workplace accident," but considered the situation "more in the nature of pain rather than actual erectile dysfunction." It was not until "probably right at the year 2000," he explained, that his sexual dysfunction truly emerged. And even then, the condition was intermittent and did not become chronic until later.

In addition, Berglund did not demonstrate any prejudice because of the timing of the claim. No evidence was lost; no witnesses unfound; no temporary opportunities to mitigate Landrum's medical problems squandered. Under these circumstances, the commission did not err in refusing to bar Landrum's claim under the equitable doctrine of laches.

III.

Credible evidence supports the commission's finding that Landrum's sexual dysfunction was a compensable consequence of his workplace injury. Because the claim was properly characterized as a medical *sequelae* rather than a new and separate injury, the commission correctly held Code § 65.2-601's statute of limitations did not apply. Given the circumstances explaining Landrum's delay in asserting his claim and Berglund's lack of prejudice, we also hold the commission did not err in refusing to dismiss Landrum's claim under the equitable doctrine of laches.

<u>Affirmed.</u>