ELDER, J.,
dissenting.
The majority holds, based on the Supreme Court’s decisions in Amoco Foam Products Co. v. Johnson, 257 Va. 29, 510 S.E.2d 443 (1999), and Paul Johnson Plastering v. Johnson, 265 Va. 237, 576 S.E.2d 447 (2003), that the connection between claimant’s back injury and his subsequent development of GERD is too attenuated to permit coverage under the Virginia Workers’ Compensation Act. I would hold credible evidence supports the commission’s finding that claimant’s GERD is caused or exacerbated by stress resulting from his compensable injury and that this relationship is sufficiently “direct” to establish the necessary causal connection between *30 claimant’s industrial injury and his GERD. Thus, I respectfully dissent.
The commission’s determination regarding causation is a finding of fact and may be proved by direct or circumstantial evidence. Marcus v. Arlington County Bd. of Supers., 15 Va.App. 544, 551, 425 S.E.2d 525, 530 (1993). A finding of causation need not be based exclusively on medical evidence, and a claimant is not required to produce a physician’s medical opinion in order to establish causation. Dollar Gen’l Store v. Cridlin, 22 Va.App. 171, 176-77, 468 S.E.2d 152, 154-55 (1996). Any medical opinion offered into evidence “is not necessarily conclusive, but is subject to the commission’s consideration and weighing.” Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 214 (1991). In determining whether credible evidence exists to support the commission’s findings of fact, “the appellate court does not retry the facts, reweigh ... the evidence, or make its own determination of the credibility of the witnesses.” Wagner Enters. v. Brooks, 12 Va.App. 890, 894, 407 S.E.2d 32, 35 (1991). As the majority acknowledges, unless the appellate court can say as a matter of law that claimant failed to sustain her burden of proving causation, the commission’s findings are binding and conclusive on appeal. Marcus, 15 Va.App. at 551, 425 S.E.2d at 530.
Here, credible evidence supports the commission’s finding that claimant’s compensable back injury “is a contributing factor in his [GERD].” Claimant’s primary care physician, Martin Katz, noted that claimant had no history of gastric reflux or ulcer prior to his industrial injury on September 6, 2000. Claimant’s medical records show he was treated for digestive problems while in rehabilitation immediately following his injury and that, when he was discharged from the rehabilitation facility in October 2000, about five weeks after the accident, doctors gave him a prescription for Protonix, a drug similar to Nexium, to take as needed. Finally, after claimant was diagnosed with GERD in 2004, his treating physicians gave opinions supporting a finding that claimant’s industrial injury directly caused or contributed to his GERD. Dr. Katz opined that the “emotional and physical stress *31 [claimant] endures everyday as a result of Ms injuries from [the compensable] fall may have caused Ms present gastrointestinal problems.” Dr. Alan Alfano opined claimant’s GERD was “indirectly related to Ms injury in that it is likely exacerbated by stress.” Finally, Dr. Robert Muller noted that claimant “has been experiencing significant anxiety and depression stemming from Ms physical disabilities and change of life” and that “[h]is stress level certainly must be considered as an etiological factor for the acid reflux and also considered to significantly exacerbate Ms symptoms.”
Based on tMs evidence, the commission agreed with the deputy that “tMs is not a case where stress from the physical injury causes depression which, in turn, causes GERD” and that claimant’s “GERD condition is directly caused or aggravated, at least in part, by emotional and physical stress resulting from the work injury.” The commission relied on stress, not depression, as a factor causing claimant’s GERD. Credible evidence in the record supports tMs finding.
The majority concedes that Dr. Muller’s opimon establishes “the original injury (‘A’) caused the stress/depression (‘B’), wMch in turn caused the GERD condition (‘C’),” but concludes as a matter of law based on Amoco Foam Prods, and Paul Johnson Plastering that tMs causal link is insufficiently direct. I believe the majority’s interpretation of these holdings is overly simplistic and unnecessarily narrow.
As set out above, the commission agreed with the deputy that stress, not depression, related to claimant’s compensable back injury was a direct cause of claimant’s GERD. These facts are distinguishable from those in Paul Johnson Plastering, in which the claimant was “diagnosed ... as having a major depressive disorder,” which was alleged to have caused, over a period of time, “a structural change in Ms brain or a brain injury.” 265 Va. at 239, 241, 576 S.E.2d at 449, 450. The Court held that Johnson’s depression was an intervening “injury” severing the causal link between the original wrist injury and subsequent brain injury. Id. at 244, 576 S.E.2d at 451-52. Here, by contrast, the evidence supported the com *32 mission’s finding that claimant’s stress from his back injury, like physical pain and weakness, was merely a symptom of the original compensable injury and disability rather than an intervening injury. Where pain or physical weakness from an original compensable injury causes a second injury, the case law uniformly holds that the second injury is a compensable consequence. See Amoco Foam Prods., 257 Va. at 33, 510 S.E.2d at 444-45 (physical weakness); Bartholow Drywall Co. v. Hill, 12 Va.App. 790, 791, 794, 407 S.E.2d 1, 2, 3 (1991) (physical weakness); Berglund Chevrolet, Inc. v. Landrum, 43 Va.App. 742, 752 & n. 3, 601 S.E.2d 693, 698 & n. 3 (2004) (pain and medications used to treat pain). The result is no different simply because the symptom of the original injury is emotional or psychological rather than physical. See Yellow Freight Sys. v. Robinson, 37 Va.App. 436, 441-42, 559 S.E.2d 381, 383-84 (2002) (rejecting employer’s argument that it should be held responsible “only for emotional or mental conditions caused by physical injury and not for those conditions aggravated by the physical injury,” implicitly holding that law provides coverage for all aggravations and that distinguishing between aggravation of conditions based on whether they are emotional or physical would be error). The majority’s “ABC” argument, carried to its extreme as I believe it is in this case, would prevent recovery by even a claimant who suffers one physical injury (“A”), experiences physical weakness (“B”) two years later, and falls as a result of that weakness, injuring himself again (“C”). Yet existing case law recognizes that “C” is compensable under these facts. See Amoco Foam Prods., 257 Va. at 33, 510 S.E.2d at 444-45; see also Hill, 12 Va.App. at 791, 794, 407 S.E.2d at 2, 3 (holding 1989 wrist injury, incurred when claimant fell due to weakness caused by compensable 1986 back injury, was compensable consequence). Here, claimant’s stress, proved to be at least aggravated by his compensable back injury, was nothing more than an emotional symptom of his original compensable injury. Thus, I believe credible evidence proved the necessary direct causal link existed between claimant’s back injury and his GERD.
*33 Our holding in Landrum supports this result. In Land-rum, we held the evidence supported a finding that the pain from the compensable industrial accident and the medications used to treat the pain were, “ ‘at least in part,’ ” a “ ‘direct’ ” cause of Landrum’s erectile dysfunction. 43 Va.App. at 752, 601 S.E.2d at 698. Thus, we held the erectile dysfunction was a compensable consequence of the industrial injury and that the employer was responsible for the Viagra prescription needed by the claimant in order to combat this compensable consequence. Id. at 752-53, 601 S.E.2d at 698. We expressly rejected the employer’s contention that the evidence proved no more than indirect causation — a noncompensable consequence of a compensable consequence — as in Amoco Foam Prods. and Paul Johnson Plastering. Landrum, 43 Va.App. at 752 n. 3, 601 S.E.2d at 698 n. 3.
Similarly, here, claimant’s compensable back injury and resulting disability caused stress, and the medical evidence supported a finding that this stress either partially caused or “significantly exacerbate[d]” claimant’s GERD. The evidence established that, within weeks following the accident, claimant experienced emotional distress from the accident. Although he had never had GERD before the accident, while in rehabilitation following the accident, he had indigestion severe enough to require treatment, and upon his discharge from rehabilitation, he received a prescription for Protonix, a drug similar to Nexium, to take as needed. Evidence from claimant’s treating physicians supported a finding that stress from claimant’s back injury and resulting disability caused or “significantly exacerbate[d]” his GERD. Thus, regardless of whether any physician expressly opined that a “direct” causal connection existed between claimant’s industrial injury and his GERD, see Lee County Sch. Bd. v. Miller, 38 Va.App. 253, 260-61, 563 S.E.2d 374, 377-78 (2002) (noting physician’s express statement of causation not required to permit commission to find necessary “direct causal connection” between work and occupational disease under Code § 65.2-400 (emphasis added)), the medical and other evidence as a whole, viewed in the light most favorable to claimant, supported the commission’s con *34 elusion that the requisite “direct” causal connection existed. Cf. Robinson, 37 Va.App. at 439-43, 559 S.E.2d at 382-84 (decided three years after Amoco Foam Prods, and, although not discussing impact of decision, holding doctrine of compensable consequences provided coverage where increased stress and anxiety caused by compensable physical injury aggravated pre-existing depression and rendered claimant totally disabled). Because I believe credible evidence in the record, interpreted in light of the applicable case law, supports that finding, I would affirm the commission’s award of benefits.
For these reasons, I respectfully dissent.